### *JOE THOMAS v. THE STATE.

### No. 2029.  Decided January 24, 1900.

**1.  Murder—Charge as to Manslaughter and Cooling Time.**

On a trial for murder where it appears that deceased had made a previous assault of a serious character upon defendant, recently before the homicide, causing defendant pain and bloodshed, from which he was still suffering at the time of the homicide, the jury should be left by the court, under proper instructions, to decide whether or not the previous assault engendered passion in defendant, and whether or not a sufficient time had elapsed for his mind to become cool when he committed the homicide; for, if a sufficient cooling time had not elapsed, and defendant's mind was still excited by passion, he could not be convicted of a greater offense than manslaughter. And it is error to refuse to so instruct the jury.

**2.  Manslaughter—Provocation.**

While our statute says that the provocation essential to reduce murder to manslaughter must arise at the time of the homicide, and not be the result of a former provocation, yet, it evidently includes such provocation as constitutes a part of the res gestae, or is so near in point of time to the homicide as not to allow the mind of a person of ordinary temper, excited by such previous provocation, to become cool and composed before the act of killing. And, in proper cases, this matter should be submitted to the jury in the charge.

**3.  Same—Evidence.**

On a trial for murder, where the evidence shows that defendant was looking for deceased, testimony that he looked into a saloon door, and said, "he is not in here," evidently had reference to deceased and is admissible.

APPEAL from the District Court of Morris.  Tried below before Hon. J. M. TALBOT.

Appeal from a conviction of murder in the first degree; penalty, a life term imprisonment in the penitentiary.

The indictment charged appellant with the murder of J. W. High on the 3d day of December, 1898, by shooting him with a pistol.

The case is sufficiently stated in the opinion.

*Sheppard, Jones & Sheppard,* for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life, and he prosecutes this appeal.

According to the State's theory, this was murder in the first degree. The testimony for the State tends to show that appellant and deceased had a difficulty over a game of cards some two or three hours before the homicide, and on the same day, in which deceased cut appellant with a knife, and on account of this grudge appellant lay in wait for deceased, and, when he approached, shot and killed him. The testimony

---

*This case should have appeared in the 41st volume of the Texas Criminal Reports, but it only reached the hands of the Reporter on October 26, 1901, after the 41st volume was complete.

of defendant tended to show self-defense, or, at most, that he could
only be guilty of manslaughter. His witnesses testify that some two
or three hours before the homicide he and appellant, with others, were
engaged in a game of cards; that deceased made an assault on de-
fendant, and defendant in going downstairs, in escaping, was struck
on the head by deceased with a knife, which inflicted upon him a
wound some two or three inches long, causing him pain and bloodshed;
that thereafter deceased made threats against appellant, and attempted
to decoy him into a certain back alley, so that he might have an oppor-
tunity to kill him; that appellant was advised of this, and was told
that he had better go home; that he was preparing to go home, and
as he went down the street defendant came out of a saloon, and at-
tacked him with a pistol; that in the struggle deceased fired the first
shot; that appellant then shot deceased and ran, after which deceased
fired two or three shots at him. From this appellant contends that he
was justified in what he did, or, at most, he could only be convicted of
manslaughter. The court charged murder in the first and second de-
grees, manslaughter, and self-defense.

The only ground of complaint necessary to be noticed is the refusal
of the court to give appellant's special requested charge on manslaugh-
ter. As stated above, the court gave a charge on manslaughter, in-
structing the jury, among other things, that the provocation must arise
at the time of the commission of the offense, and that the passion is
not the result of a former provocation; that adequate cause is such as
would commonly produce a degree of anger, rage, resentment, or terror
in a person of ordinary temper, sufficient to render the mind incapable
of cool reflection; that an assault and battery by deceased, causing
pain or bloodshed, or any condition or circumstance which is capable
of creating, and which does create, sudden passion, such as anger, rage,
sudden resentment, or terror rendering the mind incapable of cool
reflection, etc., is adequate cause. The court further instructed the jury
that, although the law provides that the provocation causing the sud-
den passion must arise at the time of the killing, still, in determining
the adequacy of the provocation, they might consider in connection
therewith all the facts and circumstances in evidence in the case, etc.
Appellant complains that this charge is too restrictive, in that the
adequate cause relied on by him was the assault made by deceased on
him some two or three hours before the homicide, in which deceased
gave him a severe stab in the head with a knife, which caused him pain
and bloodshed; that the charge of the court ignored this entirely, and
confined the jury simply to adequate cause arising at the time of the
homicide; and he insists that the special charge asked by him would
have cured this defect, said special charge being predicated on the former
assault made by deceased on appellant. We have examined the special
charge, and while we do not think it was full enough, inasmuch as
it nowhere calls attention to the matter of cooling time between the
assault by deceased and the subsequent homicide, yet it does call the

attention of the jury directly to the previous assault, and instructs them, substantially, that if deceased made an assault on appellant, and such assault caused him pain or bloodshed, and if they further believed that while he was suffering from such pain, and while his mind was still excited and incapable of cool reflection, he shot and killed deceased, then he would only be guilty of manslaughter. It would have been better if, in this connection, the court had given a charge on cooling time. Still, as stated, the requested charge called the attention of the court to the very cause on which appellant relied to reduce the homicide to manslaughter, and was calculated to cure the court's charge which confined the jury, in considering adequate cause, to the very time of the homicide. We are aware that our statute says that the provocation must arise at the time of the homicide, and must not be the result of a former provocation; yet, in our opinion, the statute evidently includes such provocation as constitutes a part of the res gestae, or is so near in point of time to the homicide as not to allow the mind of a person of ordinary temper, which has become excited by some previous provocation, to become cool and composed before the act of killing. What is sufficient cooling time is a matter of fact, and must be judged by the circumstances attending each particular case. The time in which the mind of an ordinary man, under like circumstances, would have cooled, is a reasonable time. But in every proper case this matter should be submitted by the court to the jury in appropriate instructions. 2 Bish. New Crim. Law, secs. 711-713; Jones v. State, 33 Texas Crim. Rep., 492. Under the charge of the court as given, the jury were not authorized to look at all to the previous assault, about which there was no controversy, except to aggravate or intensify some provocation given at the very time of the homicide. Evidently the jury, considering the verdict rendered in this case, did not believe that any provocation was given at the time; and they were only authorized, in case they believed that there was a provocation given at the very time, to look to a former provocation. Indeed, while the testimony for defendant strongly suggests self-defense, it does not show any adequate cause at the time to reduce a felonious homicide to manslaughter. Therefore the effect of the charge of the court was to entirely deprive appellant of the previous assault made on him by deceased, as the jury could only regard it to intensify some adequate cause given at the time. So, in our opinion, the effect of the charge was to utterly deprive appellant of his defense of manslaughter. We would not be understood as holding that in every case where a recent assault by deceased on defendant is shown, and the homicide subsequently occurs or is brought about on account of the previous assault, the doctrine of manslaughter, predicated on such previous assault, should be given in charge by the court. The previous assault must be either a part of the res gestae, or so recent as to suggest that a sufficient time has not elapsed to permit the mind of an ordinary man under like circumstances to become cool and composed. But we do hold in this case that the proof shows, without any contro-

versy, that a severe and uncalled for assault was made by deceased on appellant from two to three hours before the homicide; that this caused appellant both pain and bloodshed, and he was still suffering, according to the testimony, from the wound inflicted on him, when he shot deceased; and it should have been left to the jury to decide, under appropriate instructions, whether or not the previous assault engendered passion, and whether or not a sufficient time had elapsed for his mind to become cool when he committed the homicide—for if a sufficient cooling time had not elapsed, and his mind was still excited by passion, he could not be convicted of a greater offense than manslaughter.

Inasmuch as this case is to be tried again, we would state that, in our opinion, the testimony of Jim Stewart, to the effect that defendant looked in at the door of Davis' saloon, and said, "He is not in here," was admissible, as presented in the bill of exceptions. Said bill shows that at the time defendant was looking for deceased. This is not similar to the testimony admitted in the Gaines case, cited by appellant, Gaines v. State (Texas Crim. App., Tyler Term, 1899), 53 S. W. Rep., 623. There a declaration of defendant was isolated, and was not shown to point to deceased. Here appellant had inquired for deceased, and was looking for him, and, looking into the saloon, remarked, "He is not in here." Evidently he could have had no other reference than to deceased. For the error of the court in failing and refusing to give proper instructions on manslaughter, the judgment is reversed and the cause reman

*Reversed and remanded.*

[NOTE.—The Assistant Attorney-General filed a motion for rehearing in behalf of the State, which was overruled without a written opinion.—Reporter.]