# MARTIN A. KEENEY v. STATE.

No. A-8245.   Jan. 2, 1932.
(6 Pac. [2d] 833.)

Clarence W. Myers and Gordon Johnston, for plaintiff in error.

J. Berry King, Atty. Gen., Smith C. Matson, Asst. Atty. Gen., and Lewis R. Morris, Co. Atty., for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted of murder in the district court of Oklahoma county, and his punishment fixed at death.

The record discloses that on September 14, 1930, Homer Folwell, a farmer 70 years of age, living about 12 miles northwest of Oklahoma City, was beaten to death with a blunt instrument, and his pockets rifled. Defendant, about 40 years old, had known Folwell a number of years and formerly had lived in the Folwell farm. He had been convicted of grand larceny and Folwell was a witness against him, and the inference of ill will because of this circumstance arises. After his discharge from the penitentiary, defendant returned to Oklahoma City, where he worked at various jobs. On the afternoon before the day of the homicide several witnesses saw a man dressed in light khaki unionalls, wearing a black cap, carrying a bundle two or three feet long under his arm, going in the general direction of the Folwell farm. Some of the witnesses recognized this person as the defendant. About 6:30 p. m. of the day of the homicide Folwell went to the farm to do the evening chores. Soon his wife came outside and, looking toward the barn, saw a man dressed in light khaki clothing standing over and beating her husband with some kind of club. She was not able to identify this person as the defendant, though the general description coincided. After having been beaten, the body of Folwell was dragged behind the barn, the pockets emptied and belongings taken. At the scene a piece of a 410 shot-

gun was picked up. About a mile away Folwell's hat was found, and near it the stock of a 410 shotgun. Some 30 days later the bent barrel of a 410 gun was found in another field. These pieces were assembled and each fitted exactly, demonstrating that deceased had been beaten to death with this gun. A chemical analysis showed the barrel to have human blood on it. About two hours after the crime defendant was seen about four miles from the Folwell farm dressed as heretofore described, walking from the direction of the farm toward the El Reno interurban line. Later he was seen to have boarded an interurban car toward Oklahoma City. An alarm having gone out, four farmers in an automobile followed this car to the Seventeenth Street Station, where defendant left it, and, at the request of these farmers, was arrested by a policeman. Upon searching defendant, the officer found a number of 410 shotgun shells in his pocket and two knives, one of which was identified as belonging to Folwell and carried by him at the time of his death. A spectacle case was also found on defendant, but it was replaced in his pocket by the officer, and as the officer was putting in a call for the police department defendant was seen to back up to a trash box and drop the spectacle case into it. When he did this, Coach Green, of Oklahoma City University, got off the bus which he had just taken, reached in and picked up the spectacle case. In this case were some clippings and a memorandum in the handwriting of Mrs. Folwell, all positively identified and shown to have been in the possession of Folwell at the time he was killed. Tracks near the body and leading away were found. In one track there was a raised place made by a hole in the shoe and one showed a nick or break in the heel of the shoe. Defendant's shoes were compared with the tracks and

found to be the same size. In one shoe there was a hole in the sole which corresponded with the raised place in the track, and in one heel there was a nick or break which corresponded with the heel track. When arrested, defendant was dressed in light khaki unionalls and was wearing a black cap. His shoes appeared to have been freshly washed, and a bandanna handkerchief in his pocket was thoroughly wet. His clothes disclosed spots which a chemist testified were blood spots, but was unable to get a sufficient quantity to determine if human blood.

Defendant claimed he had been hunting doves with one Myers who furnished him with the 410 shotgun. That he killed three doves and gave them to Myers, but when they separated Myers took the gun. He denied the pocket knife belonged to Folwell, and that he knew anything of the spectacle case and contents. Denied he was near the Folwell farm on the Saturday before the killing, or that he was north of the El Reno interurban line on either date. The evidence of guilt is conclusive. No contention is made that it is insufficient to support the judgment and sentence.

The first contention made is that certain witnesses, Tucker, Gillespie, Charbeneau, Smith, and Jones, called by defendant, and also the defendant, were not sworn. This contention is first made in the motion for a new trial. Attached to the motion is the affidavit of Tucker, Gillespie, and the defendant setting out, in substance, that they were not sworn nor affirmed at the time they testified, and that no oath or affirmation was administered to them. Charbeneau, Gillespie, Smith, and Jones testified orally in support of the motion that they were not sworn. The court reporter made a statement, in substance, that where

a witness takes the stand and is not sworn in his presence, in transcribing the testimony he follows the form of showing the witness first duly sworn. Where the witness is sworn in his presence, he usually, but not always, shows the witness sworn by the clerk or court, as the case may be. He appends a list of witnesses. After the name of some appears the words "Was sworn" and after others the word "Silent." In those where the words "Was sworn" appears, it means the witness was then sworn or stated he had been sworn. Where the word "Silent" follows the name it simply means that no record or notation as to the swearing of the witness was made. The word "Silent" appeared after the names of the witnesses Smith, Jones, Charbeneau, Tucker, and the defendant. To meet this showing, the state proved that some fifty or more witnesses were sworn at one time at the beginning of the trial. The state then called Lewis R. Morris, the county attorney, who testified the witnesses Tucker and Charbeneau were sworn, and that defendant stood up with the state's witnesses at the time the oath was administered. Yokley, a juror, testified the witnesses Tucker and Charbeneau were sworn by the court, but is doubtful as to the witness Smith. Harper, a newspaper reporter, testified that, of his own independent recollection, he remembers the swearing of the witnesses Smith and Gillespie by the trial judge.

There is no direct contradiction of the testimony of the witness Jones that he was not sworn. However, the record at the time he was called and at the beginning of his testimony is:

"Hugh Jones, called as a witness by the defendant and having been first duly sworn, testified as follows. * * *"

The witness Harper testified:

"Q. Did you attend practically all of that trial? A. Yes, sir. Q. I will ask you to state just what the procedure of the court was when the witnesses took the stand? A. Judge Hooker asked every one of them that got on the stand whether they had been sworn or not and if they said they hadn't, several when I was in there, if the court clerk was there the clerk administered the oath, and the rest of the time he did. * * *"

At the time defendant was called, the record shows the following:

"Martin A. Keeney, defendant, having been first duly sworn, testified as a witness in his own behalf, as follows. * * *"

At the conclusion of the testimony in support of and in opposition to the motion for a new trial, the trial judge said:

"I remember distinctly of administering the oath to some of the parties who have testified here this morning that they were not sworn."

Section 605, Comp. St. 1921, is in the chapter of Procedure Civil, but as there is no special provision for procedure in criminal cases the section is general in its application; it provides:

"Before testifying, the witness shall be sworn to testify to the truth, the whole truth, and nothing but the truth. The mode of administering an oath shall be such as is most binding on the conscience of the witness. An interpreter may be sworn to interpret truly, whenever necessary."

This section should be construed in connection with section 2822, Comp. St. 1921 (the harmless error statute), and also section 2943, Comp. St. 1921, which is:

"Neither a departure from the form or mode prescribed in this chapter in respect to any pleadings or pro-

ceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant or tended to his prejudice, in respect to a substantial right."

Our attention has been directed to various decisions wherein it has been held, in substance, that, where a witness for the state has testified without having been sworn, and where the accused and his counsel had no knowledge of such an irregularity until after the verdict, a new trial should be granted, although the error was inadvertent or accidental. Gibbons v. Territory, 5 Okla. Cr. 212, 115 Pac. 129; Langford v. U. S., 4 Ind. T. 567, 76 S. W. 111, 4 Ann. Cas. 1021; State v. Taylor, 57 W. Va. 228, 50 S. E. 247; Rhodes v. State, 122 Ga. 568, 50 S. E. 361; Barnes v. State, 61 Tex. Cr. R. 37, 133 S. W. 887; Smith v. State, 81 Ga. 479, 8 S. E. 187; State v. Hope, 100 Mo. 347, 13 S. W. 490, 8 L. R. A. 608; Moore v. State, 96 Tenn. 209, 33 S. W. 1046. Decisions in civil cases we do not deem applicable, but see Mayberry v. Sivey, 18 Kan. 291.

The settled rule of this court is that error is never presumed, but every presumption favors the regularity of the proceeding had upon the trial and, to be available, error must be affirmatively shown. We are convinced defendant has not sustained this burden and has wholly failed to establish the fact that any of the witnesses were not sworn. The record recites that the witnesses were duly sworn. This record is made and brought here by defendant. The solemn recitals therein and the finding of the trial judge must prevail in this court over the affidavits or testimony of the witnesses. Nor would the contention avail under the facts in this case if it had been shown. The cases in which a judgment has been reversed because witnesses were not sworn are all cases in which the witnesses testified for the state. No case has been called to our attention, and we have been unable to find one, where

a reversal has been ordered for failure to swear a defendant's witnesses. The reason would seem to be obvious. A defendant is entitled to have the state's witnesses sworn, but this is a right which is held in several of the cases cited that he may waive. Rhodes v. State, supra; Barnes v. State, supra; Smith v. State, supra; State v. Hope, supra; Moore v. State, supra. It applies with special force in the case of defendant's testimony. If defendant testified without being sworn, as he now claims, he cannot wait until the verdict is returned and use this failure as a ground for a new trial. If he was not sworn, he knew it at the time he testified. The state also has a right to have defendant's witnesses sworn. If the state by accident or inadvertence overlooks and thereby waives this right, surely the defendant would have no cause to complain.

Next it is urged that, after the jury retired to deliberate, certain documents and other evidence were delivered to the jury in the jury room out of the presence of the court, and without the knowledge or consent of defendant or his attorneys. It is made to appear that while the jury were deliberating they asked for certain documents and pictures used in the trial. At their request, the bailiff went to the county attorney's office, procured some documents and pictures, and took them to the trial judge and returned to the jury room. That the court clerk also took to the trial judge certain documents and pictures. After an inspection, the trial judge sent by the court clerk to the bailiff to be delivered to the jury certain documents and papers. Defendant contends that these exhibits contained some affidavit which had not been admitted in evidence. On the hearing of the motion for a new trial considerable evidence was taken in support or in opposition

to this assignment of error, upon the conclusion of which the following transpired:

"The Court: It becomes necessary for the court to make findings of fact in reference to the exhibits that were sent to the jury room. The jury sent down and requested such exhibits—the photographs introduced in evidence and the statement at the police station which had been identified by the defendant in this case. An effort was made to locate the counsel for the defendant and, after we waited about thirty minutes and couldn't find or locate either one of them, I sent to the county attorney's office and caused to be brought to the court the photographs and the statement, and sent them to the jury room. Those were the only exhibits sent to the jury room. Mr. Morris: We would like to have the court find whether those were introduced. The Court: They had already been introduced in evidence and exhibited before the jury, and repeatedly referred to in the arguments to the jury by counsel for the state and for the defendant."

It is not shown that the jury received any extraneous evidence or any exhibit which had not been properly identified and admitted in evidence. The sending of proper exhibits to the jury room instead of having the jury return into court and there delivering the exhibits to them in person is not error. Brown v. State, 52 Okla. Cr. 307, 4 Pac. (2d) 129; Powell v. State, 61 Miss. 319. See, also, White v. State, 20 Okla. Cr. 183, 201 Pac. 522.

Upon a consideration of the entire case, we are fully convinced defendant had a fair and impartial trial. His guilt is proven beyond any reasonable doubt, and the verdict and judgment are fully warranted by the facts and the law.

The case is affirmed.

The original time for the execution having passed, it is ordered that Friday, March 11, 1932, be fixed as the day for carrying such judgment into execution, and the warden of the penitentiary at McAlester shall on said date carry out the judgment and sentence of death by electrocution of said defendant.

DAVENPORT, P. J., and CHAPPELL, J., concur.