Joe Bug Roquemore v. The State.

No. 3828.   Decided January 23, 1907.

1.—Theft From Person—Evidence—Declaration of Third Party—Presence of Defendant.

Upon a trial for theft from the person, it was error to admit the declaration of third parties affecting the defendant's complicity in the crime made in his presence, but not shown to have been heard by him and to have called for a response.

2.—Same—Principals—Codefendant—Possession of Stolen Goods—Identification.

Upon a trial of theft from the person, testimony by the officer, that while he was taking the codefendant of defendant to jail the latter ran his hand in his pocket and pulled out a roll of greenbacks and some three or four dollars in silver, the latter being similar to that taken from the prosecutor, although the currency was not identified as the money taken from prosecutor, was admissible; it being in evidence that some $50 in currency bills and $4 in silver were taken from prosecutor while he was drunk, and that defendant and his codefendant had been seen with him, the night before said arrest. Davidson, Presiding Judge, dissenting.

3.—Same—Charge of Court—Statutes Construed—Knowledge of Prosecutor.

Where upon trial for theft from the person the evidence showed that some $54 was taken from prosecutor's pocket while in a state of intoxication, it was error to charge under article 880, Penal Code, that if the money was taken from the person of prosecutor while he was incapable of understanding the nature of the act of the parties taking the same, or of offering resistance to same that

then prosecutor was held not to have knowledge of such taking. The statute makes no such exception; and such definition of knowledge under the statute was reversible error.

Appeal from the District Court of Nocogdoches. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of theft from the person; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*King & King* for appellant.—On question of admitting in evidence money found on codefendant; Rhodes v. State, 11 Texas Crim. App., 563; Nolen v. State, 14 Texas Crim. App., 479. On question of knowledge of prosecutor of the taking of money from his person: Files v. State, 36 S. W. Rep., 93.

*F. J. McCord,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of theft from the person, and his punishment assessed at two years confinement in the penitentiary; hence this appeal.

The case is one of circumstantial evidence, and the theory of the State is that the prosecutor, J. S. Dearing, who had recently arrived with his family in the town of Nacogdoches, shortly after leaving the train, met up with appellant, Roquemore, and one Charley Slay. The prosecutor had some whisky and the parties drank thereof, and prosecutor soon became intoxicated. Appellant and his companion induced prosecutor to go into a vacant room, which had been used as a sample room, situated in rear of a bank, in order to lie down; that after he had lain down and gone to sleep appellant and his companion went into his pockets, took out his purse, which contained $50 in currency bills, and took the money therefrom, and replaced the purse in prosecutor's pocket. They also took out of his pants pocket about $1 in silver.

The evidence on the part of the State showed that prosecutor had the money when he arrived at Nacogdoches; that these parties were seen with him, and seen to go into said sample room and remain with him for some time; that the city marshal appears to have got some hint of the robbery, and went into the sample room, after appellant and his companion had left, some time in the early part of the night, found prosecutor lying on an old counter, woke him up and asked him if he had any money, to which he replied, "Yes,"—ran his hand into his pocket and took out his pocketbook and discovered that he had none; then ran his hand in another pants' pocket and said that was gone too, referring to his silver money.

Prosecutor himself testified to his arrival at Nacogdoches about 4 or 5 o'clock in the evening with his wife and children; left them at the depot and went in search of a conveyance to take him some miles

in the country to a brother-in-law; that he met up with appellant and Slay, whom he had formerly known, and got to drinking with them, and remembered going into the sample room with them, and also stated that he had some recollection of some one going into his pockets; that he had a vague idea of some one going into his pockets, and that they were taking his money, but don't know whether they were taking it to keep for him or not; that it seemed like a dream.

The State also adduced some circumstances showing that Slay had no money on the morning of the 12th of September, the day of the alleged theft, and when he was arrested and placed in jail he had some bills, seven or eight in number, and some silver money, $3 or $4. This is a sufficient statement of the case in order to present and discuss the assignments of error.

In admitting the testimony of J. M. Spradley, as follows: "That he saw the defendant, Charley Slay, at Ray's restaurant in the town of Nacogdoches the next morning after it was alleged that J. S. Dearing lost his money the night before, and the said defendant asked him what he knew about Dearing having lost the money; that said defendant stated to witness that he did not get the money, but that Roquemore may have gotten it"; defendant objected to this testimony on the ground that it was not a confession of any material fact indicating the guilt of the defendant, or that he had any connection with or any knowledge of the taking of the money from said Dearing, if any was taken; and that the statement of Charley Slay that Roquemore may have gotten the money was not a statement of any fact, but an expression of Slay's conjecture of what Roquemore may have done, and because it was not further shown that this defendant heard Slay make such statement, and was, therefore, not admissible against him. The court explains this bill with the following qualification, "that it was shown that the statement complained of was made in Roquemore's presence." This bill of exceptions also appears in substance in the statement of facts in connection with witness Spradley's testimony. It is there shown that the witness Spradley was asked if Roquemore made any reply to what Slay said. The witness answered, "No, I don't know that he did; he was talking there, but he didn't pay any attention to what Charley said." Of course, no question of arrest being in the case, and the question of warning not being presented, anything that Slay might have said in regard to his connection with the alleged offense would be admissible against him; but conceding that a conspiracy had been shown between him and Roquemore, what he may have said after the determination of the conspiracy would not have been admissible against his codefendant in Roquemore's absence. The learned judge, however, predicates the admissibility of this testimony as against Roquemore on the ground that Roquemore was present at the time the statement was made. Is the presence of the codefendant alone sufficient to authorize a declaration made by another inculpatory of him? The bill, it will be noted, raises objection to the testimony

that Slay's statement was not heard by Roquemore. Spradley, the witness, says that Roquemore was there talking but didn't pay any attention to what Charley said. The court, however, appears to have considered the mere presence of Roquemore at the time the statement was made, to be sufficient to authorize the admission of the declaration of Slay. We think under the circumstances, as shown by the two bills construed together, that the court should have gone further, and have shown that the appellant heard Slay's statement, or at least that the statement was made under such circumstances as reasonably showed that he must have heard it before he would be bound by it, or would be required to make a reply thereto. The officer Spradley does not say that appellant heard the remark, but merely states that he was not paying attention or paid no attention to it. We think, as indicated, that the court's qualifications to the bill should have gone further, and should not have rested the matter on the mere presence of the appellant at the time this codefendant made the statement. A man may be present, in the general sense of the term, without being in hearing distance of some remark or observation made at the time To be affected by any remark or conversation it must be shown to a reasonable certainty that he must have heard it. 3 Ency. of Evidence, p. 148, note 12, and authorities there cited.

The next bill of exceptions is to the testimony of the State's witness, Will Stone. It is shown that while he was taking Slay to jail the latter run his hand in his pocket and pulled out a roll of greenback bills, some seven or eight in number, and some $3 or $4 in silver, and showed the same to the witness. This was objected to on the ground that Slay was under arrest, and that no warning had been given him, and because defendant was not present on said occasion and a witness to said acts of Slay, and was not shown to have known that Slay had any money of any character, and further, because said money, if any, so exhibited by Slay to the officer, was not identified as being the money charged to have been stolen from said Dearing or any part thereof.

Reference to the statement of facts in connection with Will Stone's testimony shows in somewhat fuller measure how this matter was presented. This witness shows that he put Charley Slay in jail the afternoon of the next day of the alleged offense: that he had seven or eight bills, and about three American dollars which he exhibited; that he did not know what kind of bills they were; that he run his hand in his pocket and pulled them out.

Regardless of the question of the arrest and warning, we believe the rule is well established that it can be shown as to defendant on trial that he had on his person the fruits of the alleged crime, or had same in his possession. This rule also embraces a codefendant, that is, where the evidence, circumstantial or otherwise, shows that two or more parties were engaged in the commission of an offense as theft or robbery, and one is on trial, it can be shown as to him that another

codefendant not on trial was found in possession of the fruits of the crime. Norsworthy v. State, 77 S. W. Rep., 803; Alex Henderson v. State, 96 S. W. Rep., 37, and authorities there cited. Here there is no particular identification of the bills found in possession of Slay as those taken from the prosecutor Dearing, save that they were greenback bills. The denominations thereof are not stated. The silver money, we take it, was identified as American dollars, which would appear to be similar to those taken from the prosecutor. It is also held admissible in cases of circumstantial evidence to show, where money has been acquired by an alleged crime, that it may be shown defendant was impecunious prior to commission of offense and had money thereafter, as a circumstance against him. It occurs to us that this testimony was evidently admissible against Slay. Burrell on Circumstantial Evidence, p. 453. Was it admissible against his codefendant? We believe it was, under one or both of the above propositions. The fact that the bills were not identified as the particular money taken from prosecutor would rather go to its weight than to its inadmissibility.

Appellant raises the question as to the charge of the court, that is, he insists that the conviction was on an indictment charging him with fraudulently and without the knowledge of the prosecutor Dearing, taking $54, etc., from his person; that the proof showed that said money was not taken from the prosecutor's pocket without his knowledge; that he was at the time conscious that some person was taking his money, and that he had a faint idea that they went in his pocket and got his money. The court on this state of facts instructed the jury: "If you believe from the evidence, beyond a reasonable doubt, that the defendant, either alone or participating as principal with Slay took the money from the person of Dearing you will nevertheless acquit the defendant, unless you further believe from the evidence, beyond a reasonable doubt, that such taking was committed without the knowledge of said Dearing. You are instructed, however, that to constitute knowledge such as is meant by the above expression, Dearing must have been, at the time of such taking, in such mental condition as to enable him to comprehend and understand the import and nature of the acts of the parties so taking the money, and if, from any cause, he was, at such time, unconscious to such a degree as to render him incapable of understanding the nature and import of the acts of the parties and of offering resistance to same, then the taking his money, under such circumstances, would be without his knowledge." We do not believe that the charge of the judge on this subject was correct. Subdivision 2 of article 880, Penal Code, requires theft from the person to be committed without the knowledge of the person from whom the property is taken, or so suddenly as not to allow time to make resistance before the property is carried away. If a person knows at the time that money is being extracted from his pocket, he cannot be convicted under the first paragraph of said subdivision, but under the

second paragraph of said subdivision if he knows it, but it is taken from his person so suddenly as not to allow time for resistance, then the offense is complete.

We notice in the charge in question the court says if it is taken from his person while the party is incapable of understanding the nature of the act of the party taking and of offering resistance to same, that he is held not to have knowledge. We do not understand the statute to make any such exception. If a person knows that he is being robbed, but is incapable of making resistance on account of drunkenness or stupor, still his knowledge, although not capable of making resistance, would be complete. We believe the statute leaves this question as a simple matter of knowledge, and it is not incumbent on the court to attempt a further definition than is afforded by the statute. If prosecutor in this case knew at the time that the money was being extracted from his pocket for the purpose of depriving him of its value, and appropriating it to the use of the party taking, it would not be theft under the allegation of the indictment. If he did not know it, then it would be theft. We are not here passing on the testimony as to its sufficiency or insufficiency, but we believe the court gave the jury, in attempting to define "knowledge," an improper criterion. Files v. State, 36 S. W. Rep., 93; McLin v. State, 29 Texas Crim. App., 171.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

DAVIDSON, Presiding Judge (dissenting).—I can not agree to one of the propositions in this case. The witness Stone was permitted to testify that when Slay, codefendant of appellant, was placed in jail that he had in his possession $3 or $4 in silver, and seven or eight currency bills; that he did not know anything about the size or denomination of the bills. I do not believe this testimony is admissible for want of identification with that taken from Dearing. This was relied upon as a circumstance to show that Slay was the party guilty of taking Dearing's money, and as a further circumstance against Roquemore, who was supposed to have been with Slay. Dearing testified that he lost eight currency bills, two of the denomination of $10 and six of the denomination of $5. Stone did not know the kind or character of bills that Slay had in his possession, and as far as the records are concerned, did not even investigate or ascertain at the time. There is some testimony indicating that these bills were of a smaller denomination, perhaps only $1 bills. I take it, as a fundamental proposition, that where the possession of property recently stolen is relied upon as a circumstance to indicate the guilt of the party in possession, that it must be identified in some way as that which has been stolen. It would be no evidence against the party that he was in possession of currency of different denominations from that stolen,

and it has been held that it will not raise a legal presumption of guilt that he is in possession of property of a mere general resemblance, even in kind and amount, but where it is of the same kind and amount, it can then only be considered in connection with other proved facts as some evidence of guilt. See United States v. Candler, 65 Fed., 308. In this case it was held that coin or bank notes found in the possession of the defendant soon after the larceny charged must be clearly identified as the property stolen in order to give rise to a legal presumption of guilt, but in this case there was no attempt to prove that it was the same kind or character of money, except the fact that he had 3 or 4 silver dollars. It would hardly be taken as a circumstance against a man of guilt that he has 3 or 4 silver dollars in his possession because some other man had lost from 4 to 8 by means of larceny. Silver dollars are in such wide and extensive use in this State it could hardly be taken as a circumstance that a man would be a thief because he had 3 or 4 silver dollars. In State v. Payne, 6 Wash., 563, it was held that until the property found in possession of the accused has been identified as the property of the alleged owner, and as having been stolen, its possession calls for no explanation. It is the possession of property shown to have been stolen that raises the presumption of guilt and not the possession of like property merely. See Doss v. State, 28 Texas Crim. App., 506.

I agree to the reversal of this judgment on the charge of the court, and believe the opinion ought to have gone further and reversed for want of sufficient evidence, or rather on evidence showing that the allegation in the indictment was false, which states that the property was taken without the knowledge of Dearing, for Dearing swears that he did not know that they were taking his property, and that he supposed they were taking it to take care of it for him.