## Will Phillips v. The State.

No. 583. Decided May 11, 1910.

Rehearing denied June 8, 1910.

**1.—Murder—Evidence—Other Transactions.**

Where, upon trial of murder, the defendant's witness was asked by the State whether it was not generally understood that defendant was in the crowd who shot at the deceased through a window some time prior to the killing, which witness answered in the negative, as well as other questions of a like kind, there was no reversible error, although the manner of such cross-examination may well be questioned.

**2.—Same—Evidence—Defendant as a Witness—Acts of Defendant.**

Upon trial of murder, there was no error on cross-examination of the defendant to show that some time prior to the killing deceased was shot through the window, and that the defendant, who was a close neighbor, did not go to see the deceased; the defendant explaining that he knew the deceased had ill-will toward him.

**3.—Same—Misconduct of Jury—Affidavit.**

Where defendant in his motion for new trial attached an affidavit thereto stating that while the jury were deliberating upon the case they attended a moving picture show; but there being no statement of facts as to what really transpired at the picture show except the affidavit, the judgment of the lower court overruling the motion will not be revised.

**4.—Same—Practice on Appeal.**

Where, upon appeal from a conviction of murder, the objections to the charges of the court did not show in what manner the court erred, the same will not be considered.

Appeal from the District Court of Smith. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of murder in the second degree; penalty, thirty-five years imprisonment in the penitentiary.

The opinion states the case.

*Jno. S. McIlwaine* and *Sawnie Robertson,* for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.—Cited cases in opinion.

McCORD, JUDGE.—Appellant was indicted and tried for murder, which resulted in his conviction of murder in the second degree with a penalty of thirty-five years in the penitentiary.

On the 7th day of April, 1909, in the county of Smith, on the evening of said date, the deceased, Dave Choice, was riding along the public road in his buggy. He passed by the field of the State's witness, Taylor, who was in said field planting cotton. Deceased was going east. Some twenty minutes after he passed the witness Taylor saw the deceased, Choice, coming running towards him in the field. Deceased was an old man seventy years of age and bent double with rheumatism. When the witness Taylor looked up and saw the deceased coming toward him he saw also the appellant in this case getting through the wire fence behind the deceased. Appellant approached within about twenty steps of the deceased, the deceased cried out, "O Lordy, I am a dead man!" The witness holloed at appellant to stop; appellant paid no attention to him but fired, the load striking the old man close to the heart and the old man staggered a few steps and fell. Appellant had a single-barreled breech-loading shotgun. When the deceased fell appellant unbreeched his gun, threw out the empty shell, reloaded his gun and fired again, striking the old man in the head, killing him instantly. There is no testimony in the record that impeaches or discredits the

testimony of Taylor as to what transpired at the time of the killing. It may be stated that bad blood had existed between the deceased and the appellant for some time and threats had been made pro and con. At the time of the killing the deceased was unarmed and had no weapon on his person or about him. The defendant offered some proof to the effect that the deceased went up to the town of Winona that morning, and that when he left home had his gun, and that he had hid it on the road close about where the killing occurred, and that defendant thought at the time he killed the deceased that deceased was making for the gun where he had it hid. It is unnecessary to set out in detail all the testimony in the trial' of the case. Testimony was introduced upon the various issues in the case and the court submitted the case to the jury upon murder, manslaughter and self-defense, and also on the subject of threats. We find in the record several bills of exceptions.

Bill of exceptions No. 2 recites that while the witness Peter Lott, a witness for the defendant, was on the stand the court permitted the State to ask the witness the following questions: "Were you in the crowd that tried to shoot Dave through the window?" The witness answered, "No." The State asked the witness again, "Is it not a fact that it was generally understood that the defendant was in the crowd that shot old Dave, the deceased, through the window?" The witness answered, "No." Q. "Is it not a fact that defendant had something to do with shooting old Dave, the deceased, through the window?" A. "I do not know anything about whether defendant had anything to do with shooting the deceased through the window or not." These questions were all objected to as well as the answers on the ground that the same were irrelevant and immaterial, and that proof that a short time prior to the killing someone had shot deceased through the window without in any way connecting defendant with the shooting was highly prejudicial to the defendant. Practically these same questions were asked the witness Williams while he was on the witness stand as shown by bill of exceptions No. 1, and the witness Williams answered that before the killing he had heard old man Dave had gotten shot, but witness said that he had never heard that Will, appellant, did it. This testimony was all objected to. The court in his qualification to the two bills states that the said Williams and Lott had on direct examination testified that the reputation of the defendant for peace and quietude was good, and the State on cross-examination was permitted to ask the questions objected to for the purpose of testing the witness' knowledge of defendant's reputation and that the jury might judge the credibility of the witnesses. Had the answer of the witnesses been different, we would have a different question before us, but as these witnesses answered that they had not heard that the defendant had anything to do with the shooting of old man Choice, there was no testimony offered to show what was hearsay knowledge in the community as to who shot old man

Choice. While it is true the State is allowed great latitude in the cross-examination of witnesses to test their means of knowledge, yet the court should be careful not to allow questions to be asked that might be prejudicial to the defendant, and where a party charged with crime is being tried for that offense, general rumor in the country as to whether the party had violated the law in previously assaulting the party for whose murder he is then being tried, it might be in some instances that such testimony would be prejudicial. But as the witnesses had answered in the negative there is no merit in this contention.

When the defendant was on the witness stand he was asked by the district attorney the following question: "Is it not a fact that deceased was shot through the window at night a short time after the hog transaction, and that although you lived a short distance from his house you did not go up to see anything about it or to inquire how he was getting along?" The defendant testified that it was about a week and a half after the hog transaction when old man Dave was shot through the window; that the defendant lived on his place at the time some three-quarters of a mile from the deceased; and further testified that he did not go the next morning to see anything about it, and that his reason for not going was that he knew the deceased had ill-will toward him; and that he had nothing to do with the shooting of the deceased. It may be stated that there is some testimony in the record that would indicate that appellant was the party who had shot at the old man before this transaction, through the window at night. We can not see how, in the light of the record and the testimony in this case, that this testimony was injurious to the defendant.

The 4th bill of exceptions is to the same point as the first and second bill of exceptions, and while the witness was asked the question if he had not heard that the defendant had shot old Dave Choice through the window, the witness answered that he had not heard anything of it. In the absence of an answer that might be injurious to the defendant, we would not be authorized to reverse the case because of an improper question propounded. We are not to be understood, however, as holding that the question was improper in the light of the record in this case.

Complaint is also made that the jury were guilty of misconduct in that the jury, while they were deliberating upon the case, attended a moving picture show. The complaint is made that the jurors witnessed the production of certain described scenes upon canvas. There was no question made that the jury mixed or mingled with the crowd and nothing to indicate in the record that the jury were improperly approached, or that they separated, and nothing to indicate how or in what manner appellant was injured thereby. Appended to the motion is the affidavit of one Carl White in regard to the moving pictures that were placed upon the canvas and that it pictured

a killing, etc. The record is not accompanied with any statement of facts as to what really transpired at the picture show other than as stated by the affidavit of said White, but the motion for new trial recites that the court heard the evidence on the motion and overruled same. In the case of Dowd v. State, 55 Texas Crim. Rep., 367, we held that where the judgment overruling the motion for new trial recites that the court heard the evidence on the motion and where there is no bill of exceptions presenting the matter, and the complaint is only made by affidavit and there is no evidence in the record supporting the allegations, the judgment will be affirmed. This case differs from the case of Gant v. State, 55 Texas Crim. Rep., 284, cited by counsel, on the separation of the jury.

The 6th ground of appellant's motion for new trial is as follows: "The court erred in the following portions of its charge to the jury, to wit: Paragraphs Nos. 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27." In what respects the court erred in the different paragraphs the motion does not advise us. This ground of the motion is too general to be considered.

There being no error apparent of record prejudicial to the rights of the appellant that would authorize a reversal, the judgment is in all things affirmed.

*Affirmed.*

[Rehearing denied June 8, 1910.—Reporter.]