ANDREW KINNEY v. THE STATE.

No. 1890. Decided June 19, 1912.

Rehearing denied June 28, 1912.

**1.—Burglary—Former Acquittal—Name of Party Injured.**

Where defendant was indicted for burglary, with the intent to steal certain property belonging to A. J. Cariker, and filed his plea of former acquittal upon an indictment charging him with the burglary of the same house with intent to steal the property belonging to Tom Cariker, the court properly sustained a demurrer to the plea as the parties injured were not the same. Following Sinco v. State, 9 Texas Crim. Rep., 348, and other cases.

**2.—Same—Continuance—Immaterial Testimony.**

Where the application for continuance did not show the materiality of the absent testimony, there was no error in overruling same.

**3.—Same—Charge of Court—Definition of House.**

Where, upon trial for burglary, the evidence showed that the building entered consisted of a room in which hay had been stacked as high as the joists, making a partition of the room, and which room had a door at each end, there was no error in the court's charge to define what constitutes a house as applicable to said evidence, and instructing the jury that if such hay constituted an obstruction reaching near the roof so as to make it necessary to climb or crawl over it in order to pass from one end of the room to another, then each was a separate house. Following Anderson v. State, 17 Texas Crim. App., 309, and other cases.

**4.—Same—Charge of Court—Occupant.**

Where, upon trial of burglary, the court instructed the jury that if the alleged owner or occupant had the key and exclusive right and means of entry then he would in law be the occupant, there was no error.

**5.—Same—Requested Charges—Bill of Exceptions.**

Where the requested charges were fully covered by the main charge, except the one in regard to the remark of State's counsel, but there was no exception reserved to said remarks, there was no error.

**6.—Same—Misconduct of Jury—Statement of Facts.**

Where the evidence heard on motion for new trial on the ground of the misconduct of the jury was not filed until after the adjournment of the trial court, the same could not be considered on appeal; besides the alleged misconduct was not such as to present ground for reversal. Following Probest v. State, 60 Texas Crim. Rep., 609; Barnes v. State, 61 Texas Crim. Rep., 37, and other cases.

**7.—Same—Statement of Evidence—Practice on Appeal.**

Where appellant in his motion for rehearing criticised the statement contained in the opinion showing that defendant had used force in opening the door of the alleged burglarized house, but the record bore out the court's statement of the facts, there was no error.

**8.—Same—Partition in Room.**

A partition in a room need not be a permanent partition, if it is there at the time of the commission of the offense, but where the evidence showed that the entry was made by force it would be burglary regardless as to the question of partition.

Appeal from the District Court of Nacogdoches. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Vernon E. Middlebrook,* for appellant.—On question of former acquittal: Wilson v. State, 45 Texas, 76.

On question of continuance: Logan v. State, 39 Texas Crim. Rep., 576; Stewart v. State, 52 id., 100; Cockrell v. State, 131 S. W. Rep., 221.

On question of definition of house: Williams v. State, 39 Texas Crim. Rep., 60; Clark v. State, 56 id., 494.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted, tried and convicted of the offense of burglary, the allegation being that he burglariously entered a house occupied by A. J. Cariker, without his consent, and with the intent to steal certain property belonging to A. J. Cariker.

Appellant filed a plea of former acquittal. The plea on its face shows that appellant had been indicted for entering the same house, the allegation in that indictment being that it was occupied by Tom Cariker, and appellant had entered it with the intent to take property belonging to Tom Cariker, tried and acquitted. The court did not err in sustaining a demurrer to the plea and refusing to submit the plea to the jury. Appellant, under the former indictment, could not have been convicted for breaking a house in the control of A. J. Cariker with the intent to steal property belonging to him, as the allegation was in the former indictment that the house was occupied by Tom Cariker, they being separate and distinct individuals. This question is fully discussed in Simco v. State, 9 Texas Crim. App., 348; Wright v. State, 17 Texas Crim. App., 152; Alexander v. State, 21 Texas Crim. App., 409. The rule announced in these cases has always been followed in this court, as well as in other jurisdictions. For a collation of authorities see Cyc. vol. 12, p. 289; Branch's Crim. Law, sec. 398.

In his next bill of exceptions appellant complains of the action of the court in overruling his application for a continuance. Without discussing the diligence, the State's testimony would show that appellant and another, with a battering ram, opened a door, entered a room of a store house, and took out some beer, the State's witnesses positively identifying appellant as one of the men seen coming out of the room, and he was arrested shortly thereafter with bottles of beer in his possession, which possession is unexplained in the record. In his application for a continuance he states he expects to prove by the absent witness that on the night of the alleged burglary, a negro came to him and asked him if he wanted some beer, and upon giving an affirmative reply, the negro sold him a half dozen bottles of beer; that the negro claimed to belong to the section crew on the T. & N. O. road across the river. It is stated that the witness would swear he did not know where the negro got the beer. From this record we do not know whether appellant is a negro or a white man, and the allegations in the motion do not state that the witness would swear that appellant was not the man who sold him the beer; the application does not negative the fact that defendant may himself have been a member of the section crew of the T. & N. O. road across the river, and the identical man who sold the absent witness beer. Consequently it does not present such matter in a way that would authorize a reversal of the case. Even if the person who sold the absent witness beer had been alleged to be a different person from defendant, there is no fact or circumstance alleged that would indicate that the negro got the beer out of the

Cariker house, except perhaps the circumstance that it is shown there was more beer stolen than is accounted for by the record, but there is no allegation that this negro was ever seen in or near the Cariker house, nor that the beer sold by the negro to the absent witness was beer of the same brand. The materiality of the testimony is not made apparent by the application for a continuance.

The house alleged to have been burglarized was a store house, with two wings. In one of the rooms of the house, hay had been stacked as high as the joists, making a partition of the room. A. J. Cariker had the key to the door leading to the room, or part of room, in which the beer was stored. Tom Cariker had the key to the room or part of room north of the hay partition. To get from one room to the other, a person could climb over the hay, piled to the joists, as there was space between the joists and the roof of the building. The court charged the jury:

"If such room has a door at each end of it by which it may be entered but there is an obstruction across the room such as hay or other substance of such height and reaching so near the roof as to make it necessary to climb or crawl over it in order to pass from one of the rooms to the other, then each end of such rooms is in law a separate 'house' within the meaning of the law and the entry into such room by breaking or prizing open the door which gave immediate entrance thereto would, without the consent of the person having the occupancy of same, and with intent to commit theft of property therein, be burglary." Which paragraph of the charge was excepted to on the ground that it was an erroneous definition of a house, and was upon the weight of the testimony. It is proper for the court to define what constitutes a house as applicable to the evidence, and in so doing, such charge would not be upon the weight of the testimony. As to whether a room thus cut off in a building would constitute a house, within the meaning of our statute is so fully discussed by Judge Willson in the case of Anderson v. The State, 17 Texas Crim. App., 309, we merely refer to that case and reaffirm the rule there announced. In that case the place entered was an office in a warehouse. The office is thus described: "It is about eight or ten feet in size. It is in one corner of the hardware room, is made of pickets; the pickets are four feet high and one inch square, and about three inches apart. The gate was made of the same material and had a latch. There was an open space of about six feet between the top of the pickets and the ceiling of the house, and a person could get into this office by climbing over the pickets, without going in at the door or gate." The court held:

"We are of the opinion that the place, office, apartment or room in question in this case comes within the meaning of a 'building,' 'structure,' 'house,' as used in our statute relating to burglary. We think the evidence sufficiently proves that the office was entered by defendant by *breaking*. The slightest force constitutes a breaking, such as the *lifting the latch of a door* that is shut, the raising of a window, the

entry at a chimney, or *other unusual place*. (Penal Code, article 708.) In this case the evidence satisfactorily shows that the defendant entered the office where he committed the theft either by *lifting the latch* of the door thereto, or by climbing over the picket inclosure, and if he entered by the latter mode, it would be entering at an *unusual place* and would be a *breaking,* under our statute." For other authorities see James v. The State, 63 Texas Crim. Rep., 75, 140 S. W. Rep., 1086 and cases there cited; and Branch's Crim. Law, sections 156 and 158. The charge is not subject to the criticism that it charged the jury that A. J. Cariker was the occupant of the room burglarized. It instructed the jury if he had the key and exclusive right and means of entry, then he would in law be the occupant. This is a correct proposition as applicable to the evidence. There was no error in refusing the special charges requested as they were fully covered by the main charge, except the one in regard to the remarks of the district attorney. However, if the district attorney used such language there is no bill of exceptions verifying that fact, nor, if used, that any exception thereto was reserved. The only way it is called to our attention is that a special charge was requested, and defendant excepted to the refusal of the court to give this charge. This in no way verifies the fact that the language was used;. it may be that the court refused the charge because no such language was used, or not excepted to if used.

The only other question raised by the motion for a new trial is the alleged misconduct of the jury. In bill of exceptions No. 9 it is shown that defendant excepted to the action of the court in overruling the motion for a new trial on this ground, but the bill does not contain the evidence, merely referring to the statement of facts, which is asked to be taken as a part of the bill. The statement of facts was not filed until May 21, while court adjourned on March 22. This court in an unbroken line of decisions since the opinion in the case of Black v. State, 41 Texas Crim. Rep., 185, has held that evidence heard on a ground set up in motion for new trial, can not be preserved, by a mere statement of facts filed after term time. The authorities are collated in Probest v. The State, 60 Texas Crim. Rep., 609. But if we should consider the statement of facts and consider the testimony offered on behalf of defendant, all that was shown was that the sheriff carried the jury to a restaurant for dinner. That the jury was seated at tables Nos. 3 and 4 in the restaurant; that other people were in the restaurant eating at the counter and other tables. No one but the jury was permitted to eat at the tables at which the jury was seated. As the jurymen finished their dinner, they would get up from the table and stand about in the room, the sheriff being there in the room. It is not shown that any person spoke to any member of the jury, while they were thus waiting for the others to finish their dinner. It is true that one or two persons are shown to have passed along by where the jurymen were standing in going through the room, but such persons

did not speak to the jurymen, nor the jurymen to them. The jury-men who testified say the case was not discussed, even among themselves while in the restaurant. These facts would present no ground for reversal of the case. Barnes v. The State, 61 Texas Crim. Rep., 37, 133 S. W. Rep., 891; Robinson v. The State, 58 Texas Crim. Rep., 550, 126 S. W. Rep., 278, and cases therein cited.

The judgment is affirmed.

*Affirmed.*

Davidson, Presiding Judge, not sitting.

ON REHEARING.

June 28, 1912.

HARPER, Judge.—This case was affirmed at a former day of this term, and appellant in his motion for rehearing criticises the statement contained in the original opinion, that "the State's testimony would show that appellant and another, with a battering ram, opened a door, entered a room of a store house, and took out some beer," alleging that there was no proof that the door was opened with a "battering ram." A. J. Cariker testified: "When I left at six o'clock the front door was closed and I locked the back door and when I got back there Monday the back door had been broken open." Luke Lucas testified that he knew appellant, and described the location of the building in the town, and then said: "This blacksmith shop was nearer to the room that this beer was in than the drug store was. They didn't remain about that shop over two minutes and then they got a bar or something, I don't know what it was, and went around between the shop and telephone office and went around to the rear end of the warehouse, the Tom Cariker warehouse; they went to the rear of that warehouse, to the back; that was Andrew Kinney and Percy Birdwell that went to the rear of that warehouse. At the time they went to the rear of the warehouse we were standing on the front gallery of the telephone office down stairs. When they disappeared around the rear end of that warehouse they were about 100 feet from where we were on the gallery I guess; I heard a noise around there, I heard knocking on the door and shaking on the door. . . . After we heard that thumping on the door we went around there; we went on around and we found the door open, well the door was just standing open about a foot and a half. We saw them around there, they had gone around where we first saw them there and we waited there and watched them and after awhile they went back around there and went in the house and we went around and as they came out they had their arms full of beer, we hid behind the corner and watched them come out and they had five or six bottles of beer and they saw us and Andrew I think made the remark, 'we had had better go home,' just like that, he said it to Percy, says, 'we had better go on home,' and they started up the street and we walked up nearly to the school house and got

them and told them that Elmer Wallace said for us to take charge of them and we brought them back to the telephone office. We asked them where they got the beer and we told them we knew where they got it, that we saw them come out of the house and they said they would come back with us and we walked back down to the telephone office; we got two bottles of beer off of them and they were drinking a bottle apiece, when they saw us they dropped the beer to their sides and we brought it back to the telephone office."

John McKnight and other witnesses corroborate this testimony, and we think it justified the statement in the original opinion, at least it would show that the door was opened by force, and that is the material issue in a burglary case.

The only other contention in the motion for rehearing is that we erred in holding that the court did not err in his definition of a house. The authorities are so fully cited in the original opinion we do not deem it necessary to cite others. This contention is that a partition in a room, unless it be a permanent partition, would not make such room a house within the definition of our statute. If the partition is there at the time of the commission of the offense, we do not think how long it might or might not remain would be material. In this case the evidence shows, if appellant entered the house, he entered it by a door that was forced open, and even had other doors in the building been open at the time, yet if the entry was made at the back or side door by force, it would be burglary, and appellant forcing an entry at this door, the question of the partition wall becomes an immaterial issue.

The motion for rehearing is overruled.

*Overruled.*