### AARON SOMERS v. THE STATE.

No. 3119.   Decided April 29, 1914.

**1.—Assault to Murder—Sufficiency of the Evidence.**

Where, upon trial of assault with intent to murder, the evidence was sufficient to sustain a conviction, there was no error on this ground.

**2.—Same—Misconduct of Jury—Separation—Burden of Proof.**

Where, upon trial of assault with intent to murder, it was shown on appeal that one of the jurors, without the knowledge of the officer in charge of the jury, intentionally left the jury and went a distance of between three and four blocks to where his horse was tied, mounted his horse, and rode a distance of seven or eight blocks and turned the horse over to the livery stable, and then went in search of the jury traveling the streets of the town upon which were a number of people, one of whom told the juror that they were looking for him and where he could find them and that he went there and joined the jury after some fifteen or thirty minutes, the burden was upon the State to show that nothing improper occurred during the time the juror was separated from the others, and failing to do this, the same was reversible error. Following Gant v. State, 55 Texas Crim. Rep., 284, and other cases. Prendergast, Presiding Judge, dissenting.

Appeal from the District Court of Washington.   Tried below before the Hon. Ed. R. Sinks.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

Buchanan & Stone and Mathis, Teague & Embrey, for appellant.— On question of separation of jury:  Neal v. State, 50 Texas Crim. Rep., 583; Barnett v. State, 50 id., 538; Wilcek v. State, 141 S. W. Rep., 88, and cases cited in majority opinion.

C. E. Lane, Assistant Attorney General, for the State.—Cited Robinson v. State, 58 Texas Crim. Rep., 550, 126 S. W. Rep., 276; Barber v. State, 64 Texas Crim. Rep., 96; Parshall v. State, 62 Texas Crim. Rep., 177; Davis v. State, 54 id., 236; Barnes v. State, 61 Texas Crim. Rep., 37, 133 S. W. Rep., 887.

DAVIDSON, Judge, and HARPER, Judge.—We can not agree to the opinion of the Presiding Judge and think the case should be reversed. It is shown that the juror, without the knowledge of the officer in charge of the jury, intentionally left the jury, and he says he went a distance of between three and four blocks to where his horse was tied; that he then got on his horse and went a distance of seven or eight blocks to Mr. Machett's stable and turned his horse over to the person in charge of the stable, and told him to keep him and feed him.  That he did not then know where the remainder of the jury was, and he went in search of them, traveling the streets of the town of Brenham.  That there were lots of people on the streets; that he saw one McAdoo, who was not an officer, and who told him they were looking for him, and told him the jury was in a certain restaurant, and he went to this restaurant and joined the jury.  The record shows he was separated from the remainder of the jury for from fifteen to thirty minutes.  In the opinion by Presiding Judge Prendergast it is admitted that under all the decisions where a separation is shown, the burden is upon the State then to show that nothing improper took place during the time the juror was separated from the others, and all the cases cited in the opinion so holding, and in which it was held not to present reversible error the State assumed the burden, and brought the witnesses before the court.  In this instance the State did nothing of the kind.  The defendant placed the juror Breedlove on the stand and proved the separation, and proved by him that he thought he could "get back before the officer found it out"; that he saw lots of people, but denied he spoke to but two men, McAdoo and the man in charge of the livery stable.  The State called neither McAdoo nor the man at the stable to the witness stand.  It contented itself with proving that the juror first voted for an acquittal, and then for conviction and two years in the penitentiary.  If anything improper took place, the juror could hardly be expected to tell about it, and a juror, "like

Caesar's wife, should be above suspicion." The court has gone as far as it should go in holding that if the prosecution takes the laboring oar and shows that the separation was temporary, unintentional, and the juror came in contact with no one on the outside, or if he did come in contact with anyone to bring such person before the court, and fully investigate all that took place while the juror was separated from the others, it presents no reversible error. In this case we have a man who intentionally slipped off from the others, hoping to get back before his absence was discovered, he says. It is further shown that he was traveling up and down a street filled with people, going about alone. The Legislature in providing that "after a jury has been sworn and impaneled to try any case of felony, they shall not be permitted to separate until they have returned a verdict, unless by permission of the court, with the consent of defendant, and in charge of an officer," meant no separation should take place unless an officer was with the juror. This statutory law prohibits any separation unless the juror is accompanied by an officer. As before said, our court has gone a long way in order to uphold the trial court, in holding that after a separation is shown to have taken place, that if it is then shown that the defendant suffered no injury, the case will not be reversed. This statute was passed, we think, as much to protect the public as the defendant. The public has a right under it, for it is of the highest public importance that proper punishment be meted out to those guilty of crime, and if all that was necessary to be shown was that the "defendant got the lowest punishment," then the fact that a juror was "influenced" to vote for an acquittal, but if he could not secure an acquittal, then compromise on the lowest punishment, and when that was shown, no further inquiry be made might result in untold harm. There may be some conflict in the decisions, but not any very serious one we think. It has always been held that an incidental separation, where the juror came in contact with no outside person, would not be cause for a reversal; that talking over the telephone would be no ground for reversal, where the parties were brought before the court and detailed the conversation, although highly improper; that when the separation was caused by sickness or some unavoidable cause, or incidentally arose, and the parties were brought before the court and examined, and the trial court found that nothing improper had taken place, we would not reverse his action. But we do not think the authorities have gone so far that where a juror intentionally slipped off, traveled the streets of a town, on which many people were gathered, and where he admits speaking to two, and neither of these two brought before the court, that we should lend our sanction to it. It opens the door too broadly, and would in effect render meaningless that provision of the Code, for such holding would mean that if a juryman who intentionally absented himself should first vote for acquittal, and subsequently agree to a conviction for a minimum term, no testimony other than that of the juryman was necessary, and, of course, he would not admit improper conduct on his part. We are of the opinion that this is such a separation

as the law prohibits, and the State has not met the burden of showing nothing improper could have or did take place, and the case therefore should be reversed. McCampbell v. State, 37 Texas Crim. Rep., 607; Boyett v. State, 26 Texas Crim. App., 689; Defriend v. State, 22 Texas Crim. App., 570; Neal v. State, 50 Texas Crim. Rep., 583; Barnett v. State, 50 Texas Crim. Rep., 538; Gant v. State, 55 Texas Crim. Rep., 284, and cases there cited.

The judgment will be reversed.

*Reversed and remanded.*

PRENDERGAST, PRESIDING JUDGE (dissenting).—Appellant was convicted for an assault with intent to murder. The punishment for said offense is not less than two nor more than fifteen years confinement in the penitentiary. His punishment was fixed at two years,—the very lowest.

There is no statement of facts on the merits of the case. I take it none was deemed necessary. There is no bill of exceptions and no complaint in any way of the charge of the court. I must, therefore, conclude that without any doubt he had a fair and impartial trial and the evidence established his guilt. The twelve jurors found that he was guilty beyond a reasonable doubt. The learned trial judge must have so found, otherwise he would have granted a new trial.

The sole and only ground appellant has, or urged in the lower court, or this, is, that because one of the jurors separated from the others before verdict that this, and this alone, entitles him to a new trial. He, in no way, intimates that the juror who separated from the others acted corruptly, was approached in any way by any person about the case, or that he said anything or that anyone said anything to him about the case, while he was separated from the jury. As stated, his sole and only ground is, that one juror separated from the others—that and nothing else.

The uncontroverted facts on this matter are shown by a properly agreed statement of the evidence which was heard by the court on the trial of the motion for new trial on said ground. It shows: After all the evidence was in and one argument by the State's attorneys and one by the defendant's attorney had been made, supper time arrived, just before night. The trial was suspended so that all parties could go to supper. The court was to reconvene after supper and hear the concluding arguments. The jury was placed in charge of the proper officer, who started with them to a restaurant a block or two away to get their suppers. The juror Breedlove, while the jury was on the ground floor in the courthouse going to supper, without the knowledge of the officer, or any of the other jurors, slipped away from them, for the sole purpose of going to a wagon yard where he had tied his horse that day to procure the horse, take him to a livery stable and have him watered, fed and kept till next morning. His horse was tied in a wagon yard a little more than three blocks from the courthouse. He passed up the street from the

courthouse to his horse, going along the street; he saw a large number of persons in the street, but said not a word to anyone, and no one said a word to him; he got on his horse, rode him down the street past the courthouse to about two blocks, in the opposite direction from where he had his horse tied, to a livery stable. He there turned his horse over to a negro boy he found there, telling him simply and solely to water and feed his horse and keep him till the next morning. Immediately upon giving these directions and turning the horse over to the boy, he started back to find and get with the jury. The other jurors, in the meantime, had gone to the restaurant, ordered, and were eating, and had probably about concluded their meal when the sheriff discovered that one of the jurors was absent. He thereupon gave instructions to another party to hunt and find and bring back this juror. This party started out to hunt him and found him on the same block where the jurors were eating their suppers in the restaurant seeking them. He was on the sidewalk. The party hunting him was on the opposite side of the street, and when he saw him hailed him and told him that they were looking for him and indicated where they were, pointing towards the restaurant. The juror then went in the restaurant to the other jurors and stayed with them until after the verdict was rendered. On the first ballot the jury stood six for conviction and six for acquittal, said juror voting for acquittal. On a second ballot all of the other jurors voted for conviction, but this juror still stood out for acquittal and so voted. Later he agreed to the verdict of conviction, and the jury so found. At no time did this juror seek to use his influence with any of the other jurors to have them find appellant guilty. From the time this juror first left the other jurors until he returned to them, he says, was from ten to fifteen minutes; others say, it was fifteen or twenty minutes—a mere estimate as to the time. Neither appellant, nor his attorneys knew or heard anything of this juror separating himself from the others or what had occurred thereabouts until the next day after the trial was concluded, and after the verdict was rendered.

The question then is: Does this separation of this juror from the others entitle appellant to a new trial?

The statute, article 745, Code Criminal Procedure, is: "After the jury has been sworn and impaneled to try any case of felony, they shall not be *permitted* to separate until they have returned a verdict, unless by permission of the court, with the consent of the attorney representing the State and the defendant, and in charge of an officer."

Article 837, Code Criminal Procedure, is: "New trials in cases of felony shall be granted for the following causes, *and for no other.*" Then the statute gives nine separate and distinct grounds which would authorize a new trial. Not one of them says that the separation of the jury shall be such ground. The only one of these several grounds which could at all be construed to embrace the separation of the jury is the eighth, which is: "Where, from the misconduct of the jury, the court is of opinion that the defendant has not received a fair and impartial trial;

and it shall be competent to prove such misconduct by the voluntary affidavit of a juror; and a verdict may, in like manner, in such cases be sustained by such affidavit." That this juror separating himself from the others was misconduct by him there can be no question. But the statute says that such misconduct to authorize a new trial it must be when *"the court is of opinion that the defendant has not received a fair and impartial trial."* Not that separation alone would authorize or require a new trial, but only when the court is of the opinion that because thereof the defendant has not received a fair and impartial trial.

   Unfortunately the decisions of this State are not uniform on this subject. These articles of our Code, 745 and 837, have been therein continuously at least since 1856, when the Codes were first adopted. The Supreme Court of this State, when it had jurisdiction, in construing these articles, held, that before the court was authorized to grant a new trial because of the separation of the jury, the appellant had to show that because thereof he had not had a fair and impartial trial. In other words, unless he showed injury he was not entitled to a new trial. On this subject, in Jack v. State, 26 Texas, 1, the Supreme Court said: "There may have been misconduct on the part of some of the jurors; but when a new trial is sought on the ground of misconduct of the jury it must be shown to have been such misconduct as has affected the fairness and impartiality of the trial." In Wakefield v. State, 41 Texas, 556, the Supreme Court said: "It is not pretended that the juror conversed with any person in regard to the case or that defendant has not received a fair and impartial trial because of any misconduct of the jury. The juror may have been guilty of misconduct, but it is not shown that it has had any influence on the fairness of the trial and that the discretion of the court was not properly exercised in overruling that ground of the motion. (Jack v. State, 26 Texas, 1; and Jenkins v. State, decided at Austin during the last term, not published.)"

   In Ogle v. State, 16 Texas Crim. App., 361, this court, through Judge Willson, said: "The mere separation of a jury pending verdict is not cause for a new trial. In addition to the separation in contravention of law, it must be further made to appear that by reason of such separation probable injustice to the accused has been occasioned." He cited the statute and Davis v. State, 3 Texas Crim. App., 91; Cox v. State, 7 Texas Crim. App., 1; West v. State, 7 Texas Crim. App., 150; Russell v. State, 11 Texas Crim. App., 288.

   In Stewart v. State, 31 Texas Crim. Rep., 153, where it was shown that two jurors, unaccompanied by any officer, had separated from the others, took some bed clothes upstairs, went into a friend's room, got a drink of whisky and upon being asked by him they told him the jury had not agreed upon a verdict, the court said: "This, however improper and suspicious, would not of itself warrant a reversal; it not being shown that probable injustice was done."

   In Boyett v. State, 26 Texas Crim. App., 689, where the jury separated and appellant sought a new trial on that account, which was a murder

case with a life sentence and affirmed, Judge Hurt said: "In cases like the one in hand and where the jury separated without permission of the court, to reverse, it must appear that the juror conversed with others about the case, or was guilty of misconduct to the prejudice of the accused." He cited Jones v. State, 13 Texas Crim. App., 1, and the Jack and Wakefield cases, supra, and March v. State, 44 Texas, 64; Defriend v. State, 22 Texas Crim. App., 570.

Judge White, in sec. 865, p. 559, of his Ann. Code Criminal Procedure, says: "To reverse because the jury separated without the consent of the court, it must appear that the separated juror conversed with other persons about the case or committed other misconduct to the prejudice of the accused." He treats this subject on two grounds; first, "separation by consent," and second, "separation without consent." The statute and decisions also make this distinction. This case comes within the second class.

We have many cases more recently decided and even almost down to this very date, citing and approving the rule above announced and the decisions cited in this second class. However, other decisions may be found indicating, and perhaps holding, that when a separation of the jury has occurred by permission of the judge contrary to the statute the court will not look into the question at all to see whether any injury has occurred or might have occurred. These decisions are more especially under said first class. Clearly the trend of the later decisions under both classes go no further than holding that when a separation has occurred the burden is on the State to show that no injury occurred. This may perhaps be regarded now as the rule. Certainly it is as liberal to an accused as the statute authorizes or the courts should require.

In Dowd v. State, 55 Texas Crim. Rep., 367, in considering the misconduct of the jury in one separating from the other jurors and talked about the very case on trial, this court said:

"In appellant's motion for a new trial he complains of the misconduct of the jury in that after the jury retired to consider their verdict, one of them talked with the county judge of the county. In the course of said conversation, the county judge remarked to the said juror, Lyon, that the defendant (meaning this defendant) was guilty of murder. That said judge did not know until said juror was leaving his office, that he was a juror in the case. That the juror was absent from the others, and defendant says that such separation was not had by his knowledge or consent, nor by the knowledge or consent of his counsel. This motion is sworn to by the defendant, but we find no evidence in the record to support the affidavit; but the judgment of the court recites that the court heard the evidence on the motion and that same should be overruled. This is the only matter complained of in the motion for new trial." And the court affirmed the case.

In Robinson v. State, 58 Texas Crim. Rep., 550, in which the court affirmed a death penalty, this court, through Judge McCord, said: "The mere separation of the jury, pending verdict, is not cause for a new trial;

in addition to the separation in contravention of law it must further be made to appear by reason of such separation probable injustice to the accused has been occasioned," citing and reviewing many of the cases cited supra and others.

In Barnes v. State, 61 Texas Crim. Rep., 37, the court, through Judge Davidson, said: "One of the grounds of the motion for new trial is that the jury separated after being empaneled. The facts show that the horse of one of the jurors had gotten out of the pasture, where he had placed it for safe keeping during the trial and was passing along the street dragging a rope, that the juror left the jury and caught the horse a distance of twenty-five or thirty steps away and that an attorney in the case walked up and took the horse to take care of, or at least to relieve the juror of the trouble of the matter. There was nothing said by the juror to the attorney or the attorney to the juror, or by anybody to the juror in regard to the case. The above is the substance of the matter in regard to the separation. We are of opinion that this is not of sufficient importance to require a reversal."

In Gaylan v. State, 68 Texas Crim. Rep., 200, 150 S. W. Rep., 1171, the court, through Judge Davidson, in discussing appellant's bill complaining that the court permitted part of the jurors to separate and intermingle with other people in the court room, without being accompanied by proper officers and in violation of the state, said: "It does not undertake to show that the jurors had anything to do with the people or talked with them or had any discussion with them or that anybody spoke to them." See also to the same effect Kinney v. State, 67 Texas Crim. Rep., 175, 148 S. W. Rep., 783; Phillips v. State, 59 Texas Crim. Rep., 534; Cabrera v. State, 56 Texas Crim. Rep., 141; Jones v. State, 69 Texas Crim. Rep., 447, 153 S. W. Rep., 897; Parshall v. State, 62 Texas Crim. Rep., 177. A large number of other cases to the same effect could be cited but we deem it unnecessary to do so.

The record does not intimate that the juror Breedlove, on the motion for new trial, heard by the court, did not testify the truth, the whole truth and nothing but the truth. His reputation for truth and veracity was not attacked. The court saw and heard him when he testified. His testimony must have undoubtedly convinced the judge that he was swearing the truth. Besides, if he had talked to anyone, or anyone had talked to him, about the case or any other matter other than what he testified, it seems to us, witnesses could have been found and produced who would have disputed him. The fact that he had separated and where he had been and what he had done was learned just after the trial was concluded. Everything then was fresh. Taking the whole matter, we are satisfied that the trial judge,—a very careful, fair and impartial one,—was thoroughly convinced that no injury whatever to appellant was shown by the separation of said juror from the others. This court, through Judge Hurt, in Davis v. State, 28 Texas Crim. App., 542, said: "To reverse in the absence of probable injury would be contrary to principle."

Again, there is no circumstance or intimation in this record that said

juror had any cause or reason whatever to testify falsely or to act corruptly. His action and vote on the jury demonstrates that he was not against, but for, appellant. Certainly, it can not be contended with any show of reason, that said juror would ignore, or did ignore, his oath wherein he swore to render a true verdict according to the law and the evidence. Being a fair and impartial juror, there is no intimation in the record to even suggest that his verdict was not rendered in accordance with the law and the evidence. Because a juror who has no motive whatever to do otherwise, sits in a case and where the evidence and the law shows a man is guilty, beyond a reasonable doubt, so finds, can be no imputation against him, that because of this, he would swear falsely or act corruptly or do other than obey his oath as was done in this case. He is not a criminal, nor in any way charged as such, and should not be so treated, by implication or otherwise. Even where an accused is properly indicted charged with a crime, he is presumed to be innocent until his guilt is established beyond a reasonable doubt. Formerly, whenever a trial of one accused of a felony began, the sheriff had to take charge of him and pending the trial incarcerate him in the jail. Such is not the law now. Even a criminal, pending trial, if on bail before, continues on bail until his conviction, and even after conviction, when the penalty assessed is confinement in the penitentiary for less than fifteen years and he appeals he can still remain on bail and be at liberty while appealing. While the statute requires that after a trial for felony begins the jury shall be kept in charge of the sheriff and that they shall not be permitted to separate, nor converse with anyone about the case, because an ignorant juror, without the slightest corrupt motive, absents himself from the jury for a short time, he should not be regarded as a criminal, nor the trial whereon he sits as a juror held absolutely void because thereof.

The judgment of the court overruling appellant's motion for new trial expressly states that the judge heard evidence on said ground of appellant's motion. The evidence referred to doubtless is the said statement of facts in the record on that question. Thereby the judge unquestionably must have believed and held, as the evidence clearly justified him to do, that it was clearly shown that no injury whatever did occur, or could have occurred, to appellant by the separation of said juror. The evidence, I think, without contradiction, clearly shows no injury to appellant. Again, as shown above, the evidence must have established unquestionably and beyond a reasonable doubt, the guilt of appellant, that no error whatever was committed in the trial of his case and that he, without any doubt, had a fair and impartial trial. The jury assessed the lowest penalty that could be assessed under the law, and in my opinion the court below correctly overruled appellant's motion for new trial, and the judgment should be affirmed, and I respectfully dissent to the reversal, which the court orders.