## Funny McKinney v. The State.

### No. 4983.    Decided March 26, 1919.

**1.—Murder—Continuance—Practice in District Court—Motion for New Trial.**

Where the record showed that the application for continuance, and the motion for new trial, on account of the absence of defendant's witness, was correctly overruled, there was no reversible error; besides, the bill of exceptions, containing a statement of the evidence which was heard by the court thereon was not filed during term time and cannot be considered on appeal. Following Miles v. State, 82 Texas Crim. Rep. 489, 200 S. W. Rep., 158, and other cases.

**2.—Same—Practice on Appeal—Presumption.**

In the absence of a statement of facts, the presumption is that the court below correctly overruled the motion for new trial.

Appeal from the District Court of Marion. Tried below before the Hon. J. A. Ward, judge.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.— Cited cases in the opinion.

LATTIMORE, Judge.—Appellant was indicted for the murder of Monroe Paire in the District Court of Marion County, and on trial was convicted of manslaughter and his punishment fixed at two years' confinement in the penitentiary.

The difficulty occurred at a negro base-ball game and both appellant and deceased belonged to the same base-ball team. Deceased was evidently drunk, and was cursing and abusing everybody on the grounds, women as well as men, and was asked by a number of people to desist and to behave himself, but their importunities did ...t seem to have any effect upon him. It appears that several passages had taken place between deceased and appellant prior to the fatal difficulty, in all of which it may be admitted that deceased was ugly and abusive. At a certain stage of the game while deceased was playing the right field the captain of his team, one Newt Fisher, decided to take him out and substitute another player and so notified deceased. As deceased came in toward the place where the players were standing he had to pass by the first base where the appellant was, and before reaching that point it also appears that deceased met Fisher and had a wordy altercation with him. Fisher seems to have tried to get from appellant the base-ball bat with which the killing was done, but without success. Beginning at about this stage there seems confusion in the testimony as to what was done by the

parties prior to the blow, that was struck by appellant with the bat, which killed deceased.

Bill Chisholm says that deceased was talking to Newt Fisher and that his hand was hanging down by his side when appellant struck him with the bat. Duke Bolten says deceased was not making any effort to strike appellant but was talking to Fisher when appellant struck him on the head, producing his death. Robert Skinner says deceased and appellant were talking, that deceased had his knife in his right hand which was down in front of him and that he was not trying to cut appellant; that appellant struck him on the head with the bat; that just before appellant struck with the bat deceased cursed him.

West Skinner said: "Monroe Paire was talking to Funny Mc-Kinney at the time Funny hit him; he made no attempt to cut him at all; he was just cussing him." Two witnesses named Paire, brothers of the deceased, said that deceased had his knife in his hand down by his side when appellant struck him with his bat, and that deceased had made no effort to cut nor made any demonstration against appellant. Dave Holloman says that the right hand of the deceased was down by his side with the knife in it. That deceased said to appellant, "You, G-d s-b, if you want anything you can get it," and the lick of appellant was right then. He was about twelve feet from the parties. Roy Bauckham, one of the witnesses for whom the appellant made an application for a continuance, testified as a witness for the State, and said: "I did not see Monroe make any effort to cut Funny; he had his knife in his hand down in 'that position,' by his side:" deceased had used some rough language to appellant and appellant asked him why he did not go and behave himself. "Then Funny hit him with the bat." This witness was umpire in the game and says he had heard deceased and others cursing that day, and that it was a common thing.

In behalf of appellant, Ned Calvin said deceased advanced on appellant "cussing and parading" and that he had an open knife in his hand; that when he got close to appellant he raised his hand but witness could not say he raised it to cut; that appellant then "tapped" deceased on the head with the bat and knocked him down, that just before appellant struck, deceased called him G-d S-b.

Tinsey Morrow said that deceased was cursing and that there were a lot of women there and that appellant tried to get him to quit cursing, but when asked not to curse he then cursed the women too. Later deceased came up where appellant was at first base and cursed him and called him a vile name. "When Monroe said that he was in about hand reach of Funny, as well as I could say. The knife was in his hand. I seen Monroe start to raise his hand, the one he had the knife in. He was then right in

hand reach of him. That is when the defendant hit him. The defendant had not done anything at all that I know of to Monroe up to that time."

Jack Spearman said that deceased was cursing everybody and using vile language toward everybody, that when he went to go by where appellant was he called him a black S-B, and that appellant was standing there with the bat in his hand, deceased having a knife open in his hand down by his side, and that the lick was then struck but that he did not see it. Vollie Nash said deceased and appellant had some words and appellant had picked up a rock and that he, the witness, told him not to have any trouble, and that later deceased had a tangle with Newt Fisher, captain of the team; that later when taken off the field by the captain, deceased walked toward appellant with his knife in his hand, drunk and cursing and that when he got close to appellant he kinder threw his left shoulder toward appellant and threw his knife "this way," and appellant made his lick "this way." This witness said he was about forty feet away at that time and did not hear what was said between the parties. He carried appellant to town and made his bond and was on his bond at the time of the trial. Appellant testified to language a little more vigorous than any of the others, and said that deceased was advancing on him with an open knife in his hand and that he brought the bat up and knocked him over; that he expected if he had not deceased would have killed him.

To have given this much of the evidence because of the fact that appellant's main contention is that the trial court erred in overruling his application for a continuance based on the absence of the witness Rop Bauckham and Dave Washington. It will be observed that the testimony expected from said witnesses, as set out in said application, appears to be the same, to wit: "That at the time he struck Monroe Paire, deceased, that the said Monroe Paire had an open knife in his hand and was flourishing it and making hostile threats and demonstrations toward defendant, and that the said Monroe Paire was in close proximity to defendant and was in such position to carry said threats into execution." The record further shows that the absent witness Bauckham was brought into court, or came, some time during the trial and was placed on the stand as a witness in behalf of the State and told quite a different story from that set out in said application. His testimony was to the effect that the deceased was cursing everybody and that when the captain told him to come in off the right field where he was playing, that he came by first-base where appellant was; that when he came near appellant, who had a bat in his hand, deceased asked him, with an oath, how he expected to play first-base with a bat in his hand. That as he came nearer he repeated this statement, and that appellant told him to behave

himself and then hit him with the bat. That at that time deceased had his knife in his hand down in "that position" by his side and made no effort to cut appellant. Bauckham by thus becoming a witness was eliminated from the list of absentees and left only the witness Washington. In this position of the record, we think the court below amply justified in concluding that the absent witness Washington would probably testify if present as did the witness Bauckham, the affidavit for a continuance having set out their proposed testimony as identical. Nor can our view be changed by the facts that in making his motion for a new trial appellant asked, and was granted the privilege, of supporting said motion by the testimony of witnesses, among others being the said absent witness Washington, for the season that when we come to consider such testimony heard by the court in support of said motion, we are confronted by the objection made thereto by our Assistant Attorney General to the effect that the bill of exceptions containing the statement of the evidence which was heard by the court thereon, was filed too late and therefore cannot be considered by us. The term of the trial court seems to have adjourned on December 15, 1917, and this bill of exception, containing this statement of facts was not filed until February 21, 1918. It is well settled by the decisions of this court that the statement of such facts, and the bill taken thereto, must be filed during term time. Miles v. State, 200 S. W. Rep., 168; Lopez v. State, 208 S. W. Rep., 167; Dodson v. State, 76 Texas Crim. Rep., 439, 174 S. W. Rep., 1048; Kinney v. State, 67 Texas Crim. Rep., 175, 148 S. W. Rep., 783; Bailey v. State 65 Texas Crim. Rep., 7, 144 S. W. Rep., 996; Treadway v. State, 65 Texas Crim Rep., 208, 144 S. W. Rep., 655; Black v. State, 53 S. W. Rep., 116.

Not being permitted to consider the evidence thus offered in support of said motion we conclude that the trial court was justified in overruling same, the presumption in such case being in favor of the correctness and regularity of the action of the court below, in the absence of a showing to the contrary.

There were no exceptions to the charge of the court on the trial, and no bills of exception complaining of any ruling upon the reception or exclusion of evidence.

What we have said disposes of the only objections presented to this court and no reversible errors appearing, the judgment of the lower court will be affirmed.

*Affirmed.*