WALTER ARCHER V. THE STATE.

No. 11432.    Delivered April 4, 1928.

Rehearing denied May 9, 1928.

1.—Murder—Charge of Court—On Manslaughter—Held Sufficient.

Where, on a trial for murder, there was no evidence whatever of any former provocation and but little of any provocation at the time of the homicide, there was no error in the charge of the court on manslaughter restricting the consideration of provocation to the time of the homicide. Distinguishing Huddleston v. State, 54 Tex. Crim. Rep. 93, and other cases cited.

2.—Same—Charge of Court—On Cooling Time—Not Properly Presented.

Appellant's complaint to the charge of the court's failure to instruct on "cooling time" does not specifically present such objection. Where the evidence shows an excited state of mind, produced by an "adequate cause," followed by a killing shortly thereafter, but while the mind is still agitated from the former cause, the question of "cooling time" may become an issue, of fact, which should be submitted to the jury, but the facts in this case are so meager that we seriously question whether an issue upon cooling time was raised. See cases supra.

3.—Same—Evidence—On Immaterial Issue—Properly Excluded.

Where all the evidence disclosed perfectly friendly relations between appellant and deceased prior to the killing, there was no harmful error in excluding evidence that appellant had previously paid for medicine and doctor's fee for deceased.

4.—Same—Evidence—Name of Deceased—No Variance Shown.

There was no variance between the name of the deceased (Laura Johnson), as alleged in the indictment and the proof, the evidence being that she went by the name of Laura Johnson and Luela Moore. When the injured party is known by two names, it is sufficient to allege either. See Art. 401, C. C. P.; Stokes v. State, 46 Tex. Crim. Rep. 357.

5.—Same—Bill of Exception—Qualification of Court—Appellant Bound By.

Where appellant's bills of exception complaining of the absence of veniremen, are qualified by the court, and accepted by appellant as qualified, no error is discovered in the ruling of the court complained of.

ON REHEARING.

6.—Same—Charge of Court—Change in Statute—Construed.

On rehearing, appellant contends that the court's failure to charge on cooling time in this case was reversible error. While his motion for rehearing was not filed within proper time if it be considered, the changes made in reference to the effect of the charge of the court as now embraced in our present Art. 666 of P. C. of 1925, would preclude the reversal of the case on account of the assigned error in failing to submit the law of cooling time.

7.—Same—Continued.

Under the old Art. 723 of the C. C. P. of 1925 there might be merit in his complaint now presented, but under Art. 666 in our present code,

which provides: "The judgment *shall not be reversed* unless the error appearing from the record was calculated to injure the rights of defendant or unless it appears from the record that the defendant has not had a fair and impartial trial." The criticism of the charge here presented is not sound. Distinguishing Thomas v. State, 42 Tex. Crim. Rep. 384.

Appeal from the District Court of Falls County. Tried below before the Hon. E. M. Dodson, Judge.

Appeal from a conviction of murder, penalty thirty-five years in the penitentiary.

The opinion states the case.

*Higgins & Glass* of Marlin, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

HAWKINS, JUDGE.—Conviction is for murder, punishment thirty-five years in the penitentiary.

It may be stated that all the parties connected with this killing were negroes. Several years prior to the homicide appellant had married Viola, a daughter of Nancy Johnson. At the time of the marriage she had other children younger than Viola, they being a girl, Laura, and a boy, Willie. After appellant and Viola were married Laura, Willie, Nancy and Nancy's mother lived with appellant and his wife. Appellant seemed to have been regarded as the head of the family, and the relations among all the parties were pleasant. A few months before the killing Willie married, after which Laura, Nancy and her mother lived with Willie and his wife. Appellant and Viola lived apart but near them on the same farm. Appellant claimed on the trial that Nancy and Willie had made some threats against him and that the relations between them were not as pleasant as had formerly obtained: On the day of the killing Willie and his wife were away from home but returned before night. Appellant and his wife spent the day at Nancy's and all had supper there together. Shortly after supper while they were all in the house some conversation came up between Laura and appellant about a puppy. All of the witnesses save appellant claimed that nothing occurred in this conversation indicating that anybody was angry, or about which there was cause for anybody to become angry. According to the state's evidence appellant left the house, picked up a gun which had been left lying on the gallery that afternoon when appellant returned from hunting, and poked the gun in at the door, whereupon appellant's wife went to him and tried to take the gun away from him; that

Willie Johnson then said: "What's the matter with Walter, I will go out and talk to him," that he stepped out on the porch and was shot by appellant; thereupon Laura went out of the house to her brother and appellant also shot her. Willie died in a short time from the wound received but the one inflicted upon Laura at that time did not seem to have been serious, or at least not fatal, for she came back in the house and laid down on the bed. Mr. Burton, the man on whose farm the negroes lived, heard the two shots and went near enough to the house to hear Willie ask appellant why he shot him, to which appellant replied, "You'll learn after a while what I shot you for." Appellant left, taking the gun with him, but returned later. The time intervening between his leaving and return is not definitely fixed. One witness places the time at thirty minutes and another at an hour and a half. On the trial appellant claimed that he returned to the house to get his coat; that his wife caught hold of the gun and that in a scuffle over it the gun was discharged accidentally, the shot striking and killing Laura. In appellant's confession introduced by the state he said nothing about a scuffle with his wife over the gun when he returned to the house. On the contrary, he said no one saw him when he came back; that he saw Laura through the curtain of the door and shot the girl thinking at the time he was shooting the "old lady;" that he wanted to kill the "old lady" but killed Laura instead. Appellant did not call his wife as a witness. His version of the killing is not supported by any evidence save his own. He claimed upon the trial that when he and Laura were talking about the puppy some anger was displayed on the part of Nancy and Willie and that this was intensified by some of them charging that appellant had said some negro had been writing to Laura; that Willie made a threat against him, and that Nancy ordered him out of the house, threatening to "put him away" if he did not leave immediately; that he left the house and was followed by Nancy and his wife; that he picked up the gun as he was leaving, but was overtaken by his wife and Nancy as he was trying to get over the fence; that they were holding him and trying to take the gun from him; that while this was going on Willie and Laura came out of the house and were approaching him at the time he shot them. Appellant was on trial for killing Laura.

Appellant complains of the charge on manslaughter wherein the jury was told that the provocation must arise at the time of the commission of the offense and that the passion must not have been the result of a former provocation, and that the

killing must have been caused by passion arising at the time thereof. It is appellant's contention that no provocation occurred at the time the last shot was fired which killed Laura. In connection with the foregoing instructions the court gave the following charge:

"Although the law provides that the provocation causing the sudden passion must arise at the time of the killing, it is your duty in determining the adequacy of the provocation, if any, to consider in connection therewith all the facts and circumstances in evidence in the case, and if you find that, by reason thereof, the defendant's mind at the time of the killing was incapable of cool reflection, and that said facts and circumstances were sufficient to produce such state of mind, in a person of ordinary temper, then the proof as to the sufficiency of the provocation satisfies the requirements of the law, and so in this case you will consider all the facts and circumstances in evidence, all threats, if any, that were made by Willie Henderson and Nancy Johnson or either of them at the time of the killing or prior thereto, or any attack made by either of these parties, if any there were made, at the time of the killing or a short time prior thereto, the state of feeling existing between the defendant and Nancy Johnson and Willie Henderson in determining the condition of the defendant's mind at the time of the alleged killing and the adequacy of the cause, if any, producing such condition."

It is appellant's position that application of the instruction quoted was unavailing unless some provocation occurred at the time when the last shot was fired. We cannot agree that the evidence shows nothing to have occurred at the time which might be considered as a provocation. This whole issue gets into the case solely from appellant's evidence. He testified that when he left the house because of the threats of Nancy and Willie that his wife was the first one to overtake him while he was trying to get over the fence to leave the place and was tussling with and holding him; that she was joined in this effort by Nancy and while scuffling with the two of them Willie and Laura came upon the scene, whereupon he shot them; that he thought they were trying to hold him until Willie got to him. Appellant nowhere claims that either his wife, Nancy or Willie was armed, or that anyone ever struck him, but as far as he goes is to say they were holding and tussling with him; that he thought if they got his gun they would kill him with it.

In his confession, appellant says:

"I shot the boy first and I shot the girl after I shot the boy. After the shooting, I left and went to near the river, and turned around after I was a long ways from the house and when I got back to the house I shot the girl the second time. I was standing in the kitchen and shot her through a curtain door. I could see her through the curtain before I shot her. *They did not see me there the second time I shot the girl. I was just standing behind the curtain door and shot through it. I left the gun there at the house. When I shot the second time I thought I was shooting at the old lady. I wanted to kill her, but I killed Laura instead."*

Upon the trial he claimed that when he returned to the house his wife saw him and engaged in another effort to take the gun from him. Regarding this evidence in the light of his claim that his wife was the first one to engage him in a scuffle over the gun at the time of the first shooting it might well be regarded as a provocation at the time of the killing of Laura, in connection with which the conduct of the other parties might be considered as authorized in the instruction quoted. Unless the wife's act upon appellant's return to the house—conceding it to have occurred as claimed by appellant—could be regarded as some provocation, it is gravely doubtful whether the evidence would call for a charge upon manslaughter at all. If appellant based his complaint to the charge on the court's failure to instruct on "cooling time," the exceptions do not specifically so state. There is no question but that when the evidence shows an excited state of mind produced by "adequate cause" followed by a killing at a shortly later time, but while the mind is still agitated from the former cause the question of "cooling time" may become an issue of fact which should be submitted to the jury. The facts in the present record are meager upon appellant's state of mind when the fatal shot was fired, so meager that we seriously question whether an issue upon cooling time was raised. Upon the point we are referred to Huddleston v. State, 54 Tex. Crim. Rep. 93, 112 S. W. 64; Thomas v. State, 42 Tex. Crim. Rep. 386, 56 S. W. 70; Love v. State, 158 S. W. 525; Ross v. State, 53 Tex. Crim. Rep. 277, 109 S. W. 194; Garland v. State, 106 Tex. Crim. Rep. 141, 291 S. W. 244. In each of the cases it will be found that accused had been injured in a previous altercation with deceased and was still suffering therefrom when the killing took place. Upon the doctrine of "cooling time" and the proper charge upon manslaughter in connection therewith the authorities are sound, but they are not thought to have application in the present case. An excep-

tion was directed to paragraph 8 of the charge because it told the jury that it was not enough that the mind was agitated from a "provocation given by some one other than the party killed." The court must have responded to this exception by striking the objectionable language from the charge, as it does not now appear therein. Under appellant's evidence it would have been improper to have given the charge if originally written as indicated by the exception. Other exceptions were directed at different paragraphs complaining because of a failure to amplify the instructions on manslaughter. We have examined all of them but are of opinion no error appears in view of the facts and the charge given.

Dr. Hunter testifies to the good reputation of appellant, who also sought to prove by the witness that while deceased was living with appellant the latter employed witness to treat deceased, and paid for the medicine and doctor's fees. This evidence was excluded on objection by the state that it was immaterial (bill 6.). Appellant insists that it was admissible to show the friendly relations between deceased and appellant. The evidence would at least have tended to show that such relations existed at the time of the transaction inquired about, and if there had been any issue on that point the exclusion of the evidence might have been harmful. All the evidence shows that the most friendly relations existed between appellant and deceased during the time she lived with appellant and his wife. Appellant only claims that some ill feeling existed towards him on the part of Willie and Nancy after the parties left appellant's home and went to live with Willie. This being true the exclusion of the evidence was not such harmful error as calls for reversal.

There is no merit in appellant's claim of variance in the name of deceased (Laura Johnson) as alleged in the indictment and the proof. The evidence shows that she went by the name of Laura Johnson and Luela Moore. When the injured party is known by two names it is sufficient to allege either. Art. 401, C. C. P.; Stokes v. State, 46 Tex. Crim. Rep. 357, 81 S. W. 1213.

Appellant urges that the Act of the Regular Session of the Fortieth Legislature, Chap. 274, changed the punishment of murder, making the minimum penalty therefor confinement in the penitentiary for two years, and that this change in the penalty was not affected by the Act of the Special Session of the Fortieth Legislature, Chap. 8, which provided that offenses committed prior to the taking effect of Chap. 274 should be tried under the old law. The point insisted upon by appellant is that

to give the Act of the Special Session effect as to the penalty would be retroactive and therefore the court should have charged that the minimum punishment for murder was two years, although this killing occurred prior to the taking effect of Chap. 274. The views of the court as to the effect of the Special Session Act upon Chap. 274 of the Regular Session Act of the Fortieth Legislature have been fully expressed in Flores v. State (No. 11369, opinion on rehearing delivered March 28, 1928), and are not in accord with appellant's contention.

Bills of exception 1, 2, 3, 4 and 5 relate to questions concerning the absence of veniremen. The bills were not stressed in appellant's brief but we have nevertheless examined them. The explanations attached to the several bills by the presiding judge were accepted by appellant and considered in connection with the bills, no error is discovered in the ruling of the court with reference to the matters complained of.

All questions presented by appellant have been carefully considered and we fail to find anything upon which a reversal could properly be predicated.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—The motion for rehearing is filed too late to demand consideration. However, an examination of it has been made in order to determine whether in the original hearing any meritorious complaint had been overlooked.

As stated in the original opinion, the facts are not regarded such as would have required a charge on cooling time, and the charge on manslaughter, quoted in the opinion, was sufficient to guard the rights of the appellant. The case of Thomas v. State, 42 Tex. Crim. Rep. 384, especially stressed by the appellant, is one in which in a prior assault the deceased had inflicted upon the accused a serious wound with a knife, causing pain and bloodshed. This presenting a matter which was declared by law to be adequate cause, the refusal to charge on cooling time while raised in a somewhat indefinite manner by a special charge, was regarded by the court under the facts of the case of such importance as to constitute a ground for reversal. A lack of analogy of that case with the present seems clear. It may be added that since the decision of the Thomas case, supra (which was rendered in January, 1900), the statutory law gov-

erning the charge of the court had undergone material variation. At that time the statute read thus:

"Whenever it appears by the record in any criminal action, upon appeal of the defendant, that any of the requirements of the eight preceding articles have been disregarded, the judgment *shall be reversed;* provided, the error is excepted to at the time of the trial." (C. C. P., 1895, Art. 723.)

The corresponding article (Art. 666, C. C. P., 1925) declares that:

"The judgment *shall not be reversed* unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial."

The criticism of the sixteenth paragraph of the court's charge in which the jury was told in substance that if the appellant, in shooting at Nancy Johnson, not in self-defense nor under circumstances reducing the offense to manslaughter but acting upon malice aforethought, shot and killed Laura Johnson, his offense would be murder, is not sound. In view of the reference in the paragraph to the charge on self-defense and manslaughter, it was unnecessary to repeat the charge on manslaughter.

For the reasons stated the request for permission to file the motion for rehearing is denied.

*Motion to file denied.*