## ANDREW JACKSON V. STATE.

No. 24958. November 29, 1950.

*W. O'Neil Loftis,* and *Thomas and Thomas,* Big Spring, for appellant.

*Elton Gilliland,* District Attorney, Big Spring, and *George P. Blackburn,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

Appellant was convicted for the murder of his father-in-law, and the jury assessed his punishment at 20 years in the penitentiary.

From the standpoint of the state, the evidence shows that appellant killed the deceased by shooting him with a shotgun without cause or provocation.

The killing occurred at the farm house used by a crew of cotton pickers headed by the deceased, and was witnessed by Ruby Lee Fay, a daughter of the deceased, and Jack Moore, a son of the deceased, both of whom testified for the state.

Appellant's confession was offered in evidence, and the account of the killing therein contained coincides with that of the state's witnesses Ruby Lee Fay and Jack Moore.

Testifying upon the trial, appellant sought to show that he

shot in self-defense believing that the deceased was about to kill him with an ice pick.

The jury resolved this issue against appellant's contention, and the sufficiency of the evidence to support their findings is not questioned.

Only one bill of exception is found in the record. This bill complains of the failure of the court to instruct the jury that unless they found and believed from the evidence beyond a reasonable doubt that the deceased's name was Ruben Moore, or that he was known prior to his death as Ruben Moore, that they should acquit the defendant.

The indictment charged appellant with the murder of "Ruben" Moore.

Appellant's contention regarding the name arose from the testimony of Ruby Lee Fay, the daughter of the deceased, who, in her testimony, referred to the deceased as "Ruby" Moore, and as "Rubin" Moore. This witness testified in regard to the name in part as follows: "My father's name is Ruby Moore." "He pointed the gun toward my father, Ruby Moore. At that time Ruben was standing in front of the car. * * * When I saw Ruben he had a little boy by the arm. * * * I am talking about Ruby Moore, my daddy." "My name is Ruby Lee Fay. I spell that R-u-b-y. My father's name is Ruby. My father's name was Ruby also. The man who was killed was named Ruby. I am sure of that. Yes, sir, I am absolutely sure of that."

"My name is Ruby Lee Fay. I am the daughter of Alma Moore and her husband. Alma Moore's husband had a nickname, just Ruby, yes, sir. They sometimes called me Ruby and sometimes Ruben. They called my father Ruby and they called him Ruben. That is one and the same person. That is my daddy, the man Andrew Jackson killed over there this side of Ackerly.

"A minute ago I said my father's name was Ruby Moore and mine was Ruben. They call me Ruben and sometimes people call me Ruby. Also they just call me straight Ruby, like a stone in a ring. When I say they sometimes call me Ruben I am talking about myself. My father was always known as Ruby, that is all I ever heard. My father's name was Ruby. Ruby. He signed his name Ruby.

"Ruby and my mother came up here with me to pick cotton from Eldorado. Ruby is my father. Ruby and my mother and myself, and my husband and my children.

"The next thing I saw was when Andrew was standing there with a gun in his hand. * * * He was moving at that time, walking around in front of Ruby. * * * I didn't hear Ruby say anything.

"My father's name is Ruben and they called him Ruby. Awhile ago I said you spelled it with a'Y', but I didn't intend to say that. Everybody spells it different, I guess."

Alma Moore, widow of the deceased and the mother of his children, testified:

"The name of my husband was Ruben Moore. R-u-b-e-n Moore. That is the way we always spelled it, R-u-b-e-n. Sometimes he was called Ruby for short. His real name was Ruben. I have been married to him 21 years, 21 and a half years. During that time his name has been Ruben, Ruben Moore. His nickname was Ruby, we called him Ruby for short.

"It is a fact I have a daughter also named Ruby. We called her Ruby. We called her Ruben. My husband's name was Ruben. R-u-b-e-n. Ruby was just a short name. I always spelled it R-u-b-e-n, and sometimes we called him Ruby for short, but his name was Ruben. If my daughter says his name was Ruby then she is just wrong, yes, sir."

Other witnesses, both for the state and the defense, referred to the deceased as "Ruben" Moore.

If an issue was raised by the testimony quoted, the issue appears to us to have been which of the two names by which the deceased was known was his correct name?

Where a person necessary to be named in the indictment is known by two names, Art. 401, C.C.P., provides that it is sufficient to state either name.

The evidence is clear that the deceased was known by the name alleged in the indictment. It was immaterial that he may have been known also by another name. See Pena v. State, 144 Tex. Cr. R. 521, 164 S.W. 2d 703; Archer v. State, 109 Tex. Cr. R. 414, 5 S.W. 2d 503; Lunsford v. State, 80 Tex. Cr. R. 413, 190 S.W. 157.

The trial court properly refused to submit an issue to the

jury upon the undisputed fact that the deceased was named "Ruben" or that he was commonly known by that name.

No error appearing, the judgment is affirmed.

Opinion approved by the court.